UNITED STATES COURT OF APPEALS
ELEVENTH CIRCUIT

CASE NO.: 23-12476
District Court Docket No.: 20-22133-CIV-JEM

_____

RYAN MAUNES MAGLANA and FRANCIS KARL
BUGAYONG on their own behalf and as class
Representatives of all other similarly situated Filipino
crewmembers trapped aboard CELEBRITY cruise vessels,

Appellants,
vs.

CELEBRITY CRUISES INC.,

Appellee.

_____

APPEAL TAKEN FROM
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

---

**APPELLANTS' INITIAL BRIEF**

---

Raul G. Delgado, II, Esq.
Florida Bar No. 094004
DELGADO TRIAL ATTORNEYS
*Counsel for Appellants*
10661 N. Kendall Dr., Suite 218
Miami, FL 33176
Tel. No.: 305-596-7911
Toll Free: 1-877-372-0817
Fax: 305-397-2654
raul@cruiselawyermiami.com

PHILIP D. PARRISH, P.A.
*Counsel for Appellants*
7301 SW 57th Court, Suite 430
Miami, FL 33143
Tel. No.: 305-670-5550
Fax: 305-670-5552
Email: phil@parrishappeals.com

By: */s/ Philip D. Parrish*
         Philip D. Parrish
         Florida Bar No. 541877

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

### <u>TRIAL JUDGES:</u>

Martinez, Jose E., *United States District Judge*

Becerra, Jacqueline, *U.S. Magistrate Judge*

### <u>ATTORNEYS:</u>

Delgado, II, Raul G., *Counsel for Appellants/Plaintiffs*

Delgado Trial Attorneys, *Counsel for Appellants/Plaintiffs*

Gutierrez, Annalisa, *Counsel for Appellee/Defendant*

Hamilton Jerry D., *Counsel for Appellee/Defendant*

Hamilton, Miller & Birthisel, LLP, *Counsel for Appellee/Defendant*

Holland & Knight LLP, *Counsel for Appellee/Defendant*

Lopez, Lauren Vanessa, *Counsel for Appellee/Defendant*

Parrish, Philip D., *Counsel for Appellants/Plaintiffs*

Philip D. Parrish, P.A., *Counsel for Appellants/Plaintiffs*

Ponce, Scott D., *Counsel for Appellee/Defendant*

### <u>PARTIES:</u>

Bugayong, Francis Karl, *Appellant/Plaintiff*

Celebrity Cruises Inc., *Appellee/Defendant*

Maglana, Raul Maunes, *Appellant/Plaintiff*

*/s/ Philip D. Parrish*
Philip D. Parrish

C-1

## STATEMENT REGARDING ORAL ARGUMENT

This is a *de novo* review of a clearly erroneous Order granting a 12(b)(6) Motion to dismiss following remand of this case in *Maglana, et al. v. Celebrity Cruises, Inc.*, 2022 WL 3134373 (11th Cir. 2022). This case should be summarily reversed; oral argument is not necessary.

## CERTIFICATE OF TYPE SIZE AND FONT

Undersigned counsel certifies that the size and style of type used in this brief is 14-point Times New Roman.

# **TABLE OF CONTENTS**

Contents                                                                                                     Page

CERTIFICATE OF INTERESTED PERSONS .....................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ............................................. i

CERTIFICATE OF TYPE SIZE AND FONT ......................................................... i

TABLE OF CONTENTS............................................................................................. ii

TABLE OF AUTHORITIES ...................................................................................... iv

STATEMENT OF JURISDICTION..........................................................................1

ISSUES PRESENTED: ...............................................................................................1

      1.    Whether the District Court Erred by Dismissing For Failure to State a Claim The Two Claims Remanded by this Court in *Maglana v. Celebrity Cruises, Inc.,* 2022 WL 3134373 (11th Cir. 2022) ("*Maglana* I")...............................................................................1

STATEMENT OF THE CASE AND FACTS ........................................................1

STANDARD OF REVIEW ........................................................................................9

SUMMARY OF THE ARGUMENT ......................................................................9

ARGUMENT ...............................................................................................................10

      I.    THE DISTRICT COURT ERRED BY DISMISSING FOR FAILURE TO STATE A CLAIM THE TWO CLAIMS REMANDED BY THIS COURT IN *MAGLANA V. CELEBRITY CRUISES, INC.,* 2022 WL 3134373 (11TH CIR. 2022) ("*MAGLANA* I"). .......................................................10

CONCLUSION .............................................................................................................17

CERTIFICATE OF COMPLIANCE ........................................................................17

CERTIFICATE OF SERVICE ................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                      **Page(s)**

*Am. Dental Ass'n v. Cigna Corp.*,
   605 F.3d 1283 (11th Cir. 2010) ............................................................9

*Butts v. ALN & Group, LLC*,
   512 F.Supp.3d 1301 (S.D. Fla. 2021)...............................................13

*Castillo v. Argonaut Trading Agency, Inc.*,
   156 F.Supp. 398 (S.D. N.Y. 1957) ...................................................13

*Chaparro v. Carnival Corp.*,
   693 F.3d 1333 (11th Cir. 2012) ..........................................................9

Dean v. Ford Motor Credit Co.,
   885 F.2d 300 (5th Cir. 1989) ...........................................................15

*Doe v. Carnival Corp.*,
   2021 WL 7540787 (S.D. Fla. 2021).................................................14

*Doe v. Princess Cruise Lines, Ltd.*,
   657 F.3d 1204 (11th Cir. 2011) ........................................................13

*Eisenman v. Carnival Corp.*,
   424 F.Supp.3d 1303 (S.D. Fla. 2019)...............................................16

*Elbaz v. Royal Caribbean Cruises, Ltd.*,
   2017 WL 3773721 (S.D. Fla. 2017)..................................................15

*Estate of Duckett Ex Rel Calvert v. Cable News Network LLLP*,
   2008 WL 2959753 (M.D. Fla. 2008)................................................16

*Forgione v. United States*,
   202 F.2d 249 (3d Cir. 1953) .............................................................13

*Griffin Industries Inc. v. Irvin*,
   496 F.3d 1189 (11th Cir. 2007) ........................................................12

*Hart v. U.S.*,
   894 F.2d 1539 (11th Cir. 1990) ........................................................15

*Johnson v. Barnes and Noble Book Sellers Inc.*,
    437 F.3d 1112 (11th Cir. 2006) ..............................................................10

*Maglana, et al. v. Celebrity Cruises, Inc.*,
    2022 WL 3134373 (11th Cir. 2022) ........................................... passim

*Markham v. Carnival Corp.*,
    2012 WL 12866787 (S.D. Fla. 2012) ....................................................16

*Metropolitan Life Ins. Co. v. McCarson*,
    467 So.2d 277 (Fla. 1985) ....................................................................15

*Parklane Hosiery Co., Inc. v. Shore*,
    439 U.S. 322 (1979) ..............................................................................12

*Renfroe v. Nationstar Mtg., LLC*,
    822 F.3d 1241 (11th Cir. 2016) ............................................................12

*Rivers v. Dillard's Department Store Inc.*,
    698 So.2d 1328 (Fla. Dist. Ct. App. 1997).................................... 10, 11

*Skokan v. Royal Caribbean Cruises, Ltd.*,
    2018 WL 5044603 (S.D. Fla. 2018) .............................................. 13, 14

*Terry v.* Ohio,
    392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ............................11

*Union Pac. R. Co. v. Botsford*,
    141 U.S. 250, 11 S.Ct. 1000, 35 L.Ed. 734 (1891) ............................11

Statutes

28 U.S.C. §1291 ..........................................................................................1

28 U.S.C. §1331 ..........................................................................................1

Rules

Fed.R.Civ.P. 12(b)(6)..............................................................................7, 9
FRAP 32(a)(7)(B) .....................................................................................17

## STATEMENT OF JURISDICTION

The lower tribunal properly exercised jurisdiction pursuant to 28 U.S.C. §1331. This Court has appellate jurisdiction over the District Court's order dismissing this action pursuant to 28 U.S.C. §1291.

## ISSUES PRESENTED:

1. **Whether the District Court Erred by Dismissing For Failure to State a Claim The Two Claims Remanded by this Court in *Maglana v. Celebrity Cruises, Inc.*, 2022 WL 3134373 (11th Cir. 2022) ("*Maglana* I").**

## STATEMENT OF THE CASE AND FACTS

The two named Plaintiffs/Appellants and putative class representatives, Maglana and Bugayong, were Filipino crew members of the Celebrity *Millennium* in February, 2020. (ECF 19, p. 2). Maglana had been employed with Celebrity for over 14 years, most recently as a Beverage Controller onboard the *Millennium*. Bugayong had been employed by Celebrity for over four years, most recently as a Bar Storekeeper onboard the *Millennium*. (ECF 19, p. 2).

The last date passengers were aboard the *Millennium* was February 10, 2020. (ECF 19, p. 7). The passengers were disembarked in Singapore, and the vessel stayed there until February 14th when it sailed to Manila, the Philippine capital on February 19, 2020. (ECF 19, p. 7). The Appellants and other Filipino

seamen expected that they would be disembarked in their home country due to the pandemic. (*Id*.) Unfortunately, shortly after arriving in Manila, Celebrity sailed the *Millennium* away from the Philippines and their homes. (*Id.*) The only crew members allowed to disembark for repatriation were those that both had concluded their contract and had a suitable replacement onboard. (ECF 19, p. 8).

Celebrity ignored the Filipino crew members' pleas to be disembarked in their home port of Manila and instead sailed to the Western U.S. Seaboard after a stop in Honolulu. (ECF 19, p. 8). The ship arrived in Ensenada, Baja California in Mexico on March 11, 2020. (ECF 19, p. 8). Two days later Celebrity's parent company, Royal Caribbean, suspended all of its future cruises including Celebrity's cruises. (*Id*.) The following day on March 14, 2020 the CDC issued its first "No Sail Order." (*Id.*)

The *Millennium* held nearly 1,000 Filipino crew members onboard, and at least 1,700 Filipino crew members were being held captive throughout Celebrity's fleet, with an additional 7,000 Filipino crew members employed by Royal Caribbean and it's other subsidiaries. (ECF 19, p. 9).

The *Millennium* arrived in San Diego on March 20, 2020 and was still located there as of the filing the Amended Complaint on June 21, 2020. (ECF 19, p. 9). Celebrity unilaterally terminated the contracts of

Plaintiffs/Appellants, Maglana and Bugayong, on March 30, 2020. (ECF 19, p. 10). Both were advised that they would be repatriated the following day under the terms of their Collective Bargaining Agreement (CBA). (ECF 19, p. 10). But they were not. They were not repatriated until immediately after this action was filed on May 21, 2020.

Meanwhile, in mid-April, the CDC issued its second no-sail order extending the no-sail period for up to another a hundred days. Rather than pay for the repatriation of its Filipino crewmembers under CDC guidelines, Celebrity falsely claimed in a letter to its crewmembers that the CDC was preventing crew repatriations. (ECF 28-1). Celebrity promised that it would repatriate the Filipino crewmembers by May 4, 2020, but it missed that deadline as well. (ECF 28-6). On May 12, 2020 Celebrity again wrote to its crewmembers blaming the Filipino government for the repatriation delays. (ECF 28-8). Then, on May 15th, Celebrity's CEO issued a letter delaying the projected date of repatriation to June 11, 2020, continuing to blame the Filipino government. (ECF 28-9).

As a result, the Plaintiff, Ryan Maglana filed the initial Complaint in this case on May 21, 2020. (ECF 1). The following day, The Miami Herald ran an article on the lawsuit, noting that it had sought comment from Celebrity. (ECF 15, p. 2). Two days later, on May 23, 2020, a Saturday, Celebrity purchased

Maglana's ticket home (along with 200 other Filipinos on the *Millennium* including not-yet Plaintiff, Bugayong) to depart on May 26, 2020. (ECF 15, p. 2-3).

The next day, Celebrity filed a Suggestion of Mootness, hoping that its calculated decision to return the named-Plaintiff and putative class representative would end the lawsuit. (ECF 10). On June 9, 2020, the Plaintiffs responded to the Suggestion of Mootness (ECF 15) pointing out that as of May 7, 2020 there were close to 7,000 Filipino seafarers waiting to be repatriated. (ECF 15, p. 3). Celebrity did not repatriate a single Filipino crewmember for over 68 days after the first CDC's first no-sail order on March 14, 2020. (*Id.*) The first Filipino crewmember repatriated was on May 20, 2020. (*Id.*) The Plaintiffs argued that there was no mere coincidence between the filing of the Complaint and Celebrity's purchase of Maglana's return ticket, less than 48 hours later. (*Id.*, p. 4). Indeed, when Celebrity filed its Suggestion of Mootness there were still over 1,200 Filipino crewmembers waiting to be repatriated, which compromised over 70% of the Filipino crewmembers in Celebrity's fleet. (ECF 15, p. 4).[1]

Instead of repatriating the Plaintiffs/Appellants and other Filipino crew members, they were all held captive aboard the Celebrity *Millennium* for months

---

[1] The District Court never ruled on the Suggestion of Mootness.

without pay, unable to earn money for their families through other jobs.  (ECF 19, p. 10-11).  Celebrity decided it was cheaper to imprison its crew members than to repatriate them after it unilaterally terminated their contracts and refused to pay them any wages.  (ECF 19, p. 11-12).

Celebrity disclaimed responsibility for the imprisonment of the crew members, falsely blaming it upon the CDC.  (ECF 19, p. 12).  Celebrity's knowing and intentional actions constituted false imprisonment and the intentional infliction of emotional distress, as alleged in the Amended Complaint.  (ECF 19, p. 24-25; 28-29).

On June 21, 2020 Plaintiffs' filed their Amended Complaint, adding Mr. Bugayong as a named-Plaintiff and as a putative class representative.  (ECF 19).  On July 6, 2020 Celebrity moved to compel arbitration and to dismiss Plaintiffs' Amended Complaint.  (ECF 26).  Following briefing on that Motion, the District Court granted Defendant's Motion to Compel and dismissed all five counts of the Plaintiffs' Amended Complaint, including the intentional tort counts.  (ECF 46).  Plaintiffs appealed, and this Court reversed in part, *Maglana, et al. v. Celebrity Cruises Inc.*, 2022 WL 3134373 (11th Cir. 2022).

### The *Maglana* I Opinion

In *Maglana* I this Court summarized the pertinent facts alleged in the Plaintiffs' Complaint:

> Ryan Maunes Maglana and Francis Karl Bugayong were working onboard Celebrity Cruises, Inc.'s *Millennium* cruise ship in early 2020 when the COVID-19 pandemic severely disrupted lives around the world. Celebrity stopped carrying passengers but forced its crews to remain on its ships. It kept Maglana and Bugayong onboard even after terminating their employment for cause on March 30, 2020. Maglana and Bugayong sued for false imprisonment and intentional infliction of emotional distress based on the 58 days that they were confined on the *Millennium* from March 31 to May 26, 2020.

*Id.* at \*1.  Then, after noting that Celebrity had moved to compel arbitration and the District Court had granted it, this Court held:

> But our precedent holds that intentional torts like those alleged here are outside the scope of arbitration agreements strikingly similar to the agreements the plaintiffs signed. Thus, we reverse the District Court's order compelling arbitration.

*Id.*  Indeed, Judge Hull commented at oral argument that the facts in this case presented a classic case of false imprisonment.  (ECF 56, p. 5).

*Maglana* I makes repeated references to facts – all taken from the Plaintiffs' Amended Complaint -- which describe a classic claim of false imprisonment.  For instance, as of March 14:

> With no passenger cruises on the horizon for the foreseeable future, Celebrity allowed some crewmembers to disembark for repatriation and return to their home countries.  It denied Maglana, Bugayong, and nearly 1,000 other Filipino crewmembers permission to do so. The *Millennium* docked in San Diego, California on March 20 and remained there as the weeks stretched on.

*Id.*  Next the Court noted that the Plaintiffs were kept aboard the vessel against their will even after they were terminated:

On March 30, Maglana took an expensive bottle of scotch from the ship's bar and shared it with Bugayong. Celebrity terminated their employment as a result. Under the employment agreements the plaintiffs had signed, discussed below, Celebrity should have repatriated them at their own expense. Instead, Celebrity forced Maglana and Bugayong, along with hundreds of other crewmembers, to remain on the ship. Aside from two "goodwill payment[s]" of $400 each, it did not pay the plaintiffs or other crewmembers wages for the time they were confined to the ship in San Diego. Doc. 28-2.

*Id.*[2]

Thus, in *Maglana* I, this Court reversed "the district court's decision compelling arbitration of the intentional tort claims and remand[ed] for further proceedings consistent with this Opinion." *Id.* at *5.

### The Course of Proceedings Post-Remand

On November 28, 2022 this Court issued its Mandate. (ECF 52). Following Plaintiffs' unopposed request for a status conference (ECF 53; 54) Celebrity filed a Motion to Dismiss the Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6), seeking to dismiss with prejudice Counts II and V, the intentional tort counts which this Court had remanded in *Maglana* I. (ECF 55).

In that Motion Celebrity argued that the Plaintiffs' detention was "reasonable under the circumstances." (ECF 55, p. 2). In its Motion Celebrity argued unproven facts (ECF 55, p. 4-5) concerning its inability to repatriate the Filippino crewmembers. Celebrity made the factual argument that it was the

---

[2] Maglana denies that he impermissibly took the bottle of scotch.

United States government, not Celebrity that prevented the Plaintiffs from leaving the ship. (ECF 55, p. 7-9). Celebrity made similar fact-based arguments with respect to the Plaintiffs' negligent infliction of emotional distress claim. (ECF 55, p. 11-13).

The Plaintiffs filed a Response to the Motion to Dismiss (ECF 56), arguing (a) that the Motion was untimely because it had not been made in conjunction with the original Motion to Dismiss; (b) that the Motion argued unproven facts as if it were a premature summary judgment motion, and (c) that the Plaintiffs' Complaint properly pleaded causes of action for false imprisonment and negligent infliction of emotional distress.

Upon completion of the briefing of the motion, the District Court issued an Order Setting a Civil Trial Date and Pretrial Schedule, Requiring Mediation and Referring Certain Motions to the Magistrate Judge (ECF 58). Thereafter, the case proceeded with the filing of a Joint Conference Report (ECF 66), the filing of Plaintiff's Unopposed Expedited Motion to Reassign Case to Complex Case Track (ECF 73). The District Court denied that motion without prejudice requiring a Renewed Motion with proposed extended deadlines to be filed. (ECF 74). The Plaintiff complied with that Order. (ECF 75).

Then, on the same day that the parties conducted a discovery hearing before the Magistrate Judge (ECF 80; 81; 84) the District Court granted

Celebrity's Motion to Dismiss with Prejudice. (ECF 83). The Plaintiffs timely appealed.

## STANDARD OF REVIEW

This Court reviews *de novo* a District Court's grant of a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010). In so doing, this Court accepts the Complaint's allegations as true and construes them in the light most favorable to the Plaintiff. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012).

## SUMMARY OF THE ARGUMENT

We are almost four years into this litigation, on a second appeal, and not a single deposition has been taken. Instead, on the same day that Magistrate Judge (soon to be District Court Judge) Becerra held a discovery hearing and ordered certain interrogatory responses on both parties' motions (ECF 84), the District Court granted Celebrity's post-*Maglana* I-mandate Rule 12(b)(6) motion to dismiss.

For a second time the District Court stopped the Plaintiffs in their tracks on the basis of faulty legal analysis. Plaintiffs properly pled all of the elements of a claim for false imprisonment. Nevertheless, the District Court relied upon an attachment to the Defendant's Motion to Dismiss which, at best, should have been asserted as an affirmative defense, to grant the Motion to Dismiss. (ECF 83, p. 8).

But the District Court got that wrong too. Far from "proving" that the Plaintiffs could not state a claim, the attachment (ECF 55-1) actually instructed Celebrity how to safely disembark the Plaintiffs and their fellow Filipino crewmembers. (ECF 55-1, p. 2-3 of 3).

In addition, the District Court erroneously granted Celebrity's Motion to Dismiss the Plaintiffs' claim for intentional infliction of emotional distress. The Plaintiffs appeal both rulings.

## **ARGUMENT**

**I.    THE DISTRICT COURT ERRED BY DISMISSING FOR FAILURE TO STATE A CLAIM THE TWO CLAIMS REMANDED BY THIS COURT IN *MAGLANA V. CELEBRITY CRUISES, INC.*, 2022 WL 3134373 (11TH CIR. 2022) ("*MAGLANA* I").**

### **A.    This Circuit's Law on the Tort of False Imprisonment**

In *Johnson v. Barnes and Noble Book Sellers Inc.*, 437 F.3d 1112 (11th Cir. 2006) this Court drew a distinction between a claim for false imprisonment and a defendant's affirmative defense to that claim:

> Once a plaintiff has established his detention by one who has no authority to detain him, the defendant may challenge the claim of an unlawful detention **by asserting the lawfulness of the detention as an affirmative defense**.

*Id.* at 1116 (emphasis added) (citing *Rivers v. Dillard's Department Store Inc.*, 698 So.2d 1328, 1331 (Fla. Dist. Ct. App. 1997). The Plaintiff is required only to

establish imprisonment contrary to his will and the unlawfulness of the detention. *Id.*

This Court began its analysis in *Johnson* with the following quote from *Terry v. Ohio*:

> No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of its person, free from all restraint or interference of others, unless by clear and unquestionable authority of law.

392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (quoting *Union Pac. R. Co. v. Botsford*, 141 U.S. 250, 251, 11 S.Ct. 1000, 35 L.Ed. 734 (1891)).

In this case the District Court decided, on a 12(b)(6) Motion to Dismiss, that Celebrity did not violate the Plaintiffs' sacred, carefully guarded common law right to be free from all restraint and interference of others. The District Court improperly ruled on what, at best, could be described as Celebrity's affirmative defense that a CDC circular (which actually described how Celebrity *could* free the Plaintiffs) clothed Celebrity's actions with immunity. The District Court decided, as a matter of law, that the "affirmative defense" precluded Plaintiffs from stating a claim. The District Court must be reversed.

The attachment to the Defendant's Motion to Dismiss, titled "Attestation for Non-Commercial Travel or Crew Transfers Pre-Approval of NSO Response Plan," actually provides the cruise line with a step-by-step process on how to disembark its crewmembers. Thus, the District Court was clearly erroneous both substantively

11

and procedurally, by ruling on a 12(b)(6) motion to dismiss on the basis of an asserted affirmative defense which does not, on its face, excuse Celebrity's behavior *as a matter of law*.

Celebrity argued below that the allegations in the Plaintiffs' Amended Complaint were obviated as a matter of law by various materials attached to the Amended Complaint concerning Covid and the CDC no sail orders, citing *Griffin Industries Inc. v. Irvin*, 496 F.3d 1189, 1206 (11ᵗʰ Cir. 2007). (ECF 55, p. 9). Celebrity then proceeded to argue unestablished facts in support of its 12(b)(6) Motion to Dismiss for failure to state a claim. Here, however, the attachments to the Complaint, as well as the attachment to Celebrity's Motion to Dismiss do not, as a matter of law, contradict the allegations in the Plaintiffs' Complaint, and certainly do not permit the conclusion as a matter of law that the Plaintiffs had failed to state a claim. *See, e.g., Renfroe v. Nationstar Mtg., LLC*, 822 F.3d 1241, 1245 (11ᵗʰ Cir. 2016) (distinguishing *Griffin Industries*).

"Trial by a jury of laymen rather than by the sovereign's judges was important to the founders because juries represent the layman's common sense, the 'passional elements in our nature,' and thus keep the administration of law in accord with the wishes and feelings of the community." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 343-44 (citation omitted) (1979) (*Rehnquist, J.*, dissenting).

### B.    Count II of the Amended Complaint states a valid claim for False Imprisonment.

False Imprisonment is a tort available under general admiralty law. *See, e.g., Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204 (11th Cir. 2011) (reversing and remanding order compelling arbitration of, e.g., false imprisonment claim). *Butts v. ALN & Group, LLC*, 512 F.Supp.3d 1301, 1308-1309 (S.D. Fla. 2021); *Forgione v. United States*, 202 F.2d 249, 252 (3d Cir. 1953) (holding that plaintiffs could not proceed on a claim of false imprisonment under the Jones Act, but suggesting had the defendant's actions taken place on navigable waters rather than on shore, plaintiffs could have brought the claim as a maritime tort). *See also, Castillo v. Argonaut Trading Agency, Inc.*, 156 F.Supp. 398, 400 (S.D. N.Y. 1957). Furthermore, numerous courts in this district have recognized the claim in maritime cases. *See, e.g., Skokan v. Royal Caribbean Cruises, Ltd.*, 2018 WL 5044603 (S.D. Fla. 2018) (Chief Judge Altonaga denying defendant's motion for summary judgment on false imprisonment and negligent infliction of emotional distress claims).

False imprisonment is "the unlawful restraint of a person against his will, the gist of which action is the unlawful detention of the Plaintiff and the deprivation of his liberty." *Skokan v. Royal Caribbean Cruises, Ltd.*, 2018 WL 50844603 at *5 (S.D. Fla. 2018).

Under Section 35 of the Restatement (Second) of Torts, the following

elements must be plead for a false imprisonment claim to state a valid cause of action:

> **(a)** **an act intending to confine another within fixed boundaries;**
> **(b)** **the act directly or indirectly results in such a confinement; and**
> **(c)** **the confined person is conscious of or harmed by the confinement.**

*Skokan v. Royal Caribbean Cruises, Ltd.*, 2018 WL 5044603 at *5 (S.D. Fla. 2018).

*See also, Doe v. Carnival Corp.*, 2021 WL 750787 (S.D. Fla. 2021) (granting plaintiff's partial motion for summary judgment on false imprisonment claim). Here, those requirements have been met.

CELEBRITY's Motion to Dismiss was more akin to a motion for summary judgment. CELEBRITY argued its own set of facts, rather than the allegations of the Complaint, which is what the District Court was required to review in ruling on the motion to dismiss.

In any event, Plaintiffs **did** allege that their false imprisonment was unlawful:

> 82.    At all times material Defendant CELEBRITY intentionally caused the Plaintiffs to be **held captive** against their will with **no way or ability to leave the ship** due to the Defendant's election to ignore and violate their legal obligations *under the laws of this country, International law and the Maritime Labor Convention of 2006 and its amendments.*

(ECF 19) (Bold and underlining original in Complaint; italicized emphasis added). Thus, contrary to the District Court's ruling, Plaintiffs did allege the violation of various laws.

### C.    Count V for Intentional Infliction of Emotional Distress similarly stated a valid cause of action.

This circuit looks to section  46  of  the Restatement (Second) of Torts for the elements of this claim: "One who by extreme and outrageous  conduct intentionally or recklessly causes severe emotional distress  to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *See, e.g., Hart v. U.S.*, 894 F.2d 1539, 1548 (11th Cir. 1990).  In *Hart*, applying Florida law, this Court held that to prove intentional infliction of emotional distress the plaintiff must prove (1) deliberate or reckless infliction of mental suffering; (2) by outrageous conduct; (3) which conduct must have caused the suffering; and (4) the suffering must have been severe.  (citing *Metropolitan Life Ins. Co. v. McCarson*, 467 So.2d 277, 278 (Fla. 1985)).   *See also Dean v. Ford Motor Credit Co.*, 885 F.2d 300, 307 (5th Cir. 1989) (causing innocent plaintiff to be subject to an accusation of theft and putting her in fear that it might occur satisfied outrageous conduct element of IIED).

Here, as in *Elbaz v. Royal Caribbean Cruises, Ltd.*, 2017 WL 3773721 (S.D. Fla. 2017), the Plaintiffs properly plead that CELEBRITY acted recklessly or intentionally;  that CELEBRITY's conduct was outrageous; and that the conduct caused Plaintiffs to suffer severe emotional distress. *Id.* at *4.  Here, as in *Elbaz*, the Defendant argued its conduct did not rise to the level of outrageousness sufficient to establish an IIED claim.  Accordingly, "at this point in the litigation, the record is

15

insufficiently developed to determine whether the defendants alleged conduct amounted to extremely outrageous behavior such that the plaintiff could recover." *Elbaz,* at *5 (citing *Estate of Duckett Ex Rel Calvert v. Cable News Network LLLP*, 2008 WL 2959753 at *5 (M.D. Fla. 2008). *See also, Markham v. Carnival Corp.*, 2012 WL 12866787 at *3 (S.D. Fla. 2012) (declining to dismiss claim for an IIED without further record development); *Eisenman v. Carnival Corp.*, 424 F.Supp.3d 1303, 1308 (S.D. Fla. 2019) (same).

The Plaintiffs' Amended Complaint (ECF 19) alleges Celebrity's "callous and inhumane business decision to keep crewmembers from specific countries captive onboard its passenger-less ships with no wages and no hopes of going home to family members in need, including infants, children, and elderly parents." (ECF 19, p. 6, para. 19). On February 19, 2020 despite being docked at the port of Manila Bay in the Philippines, the *Millennium* sailed away with the Plaintiffs and hundreds of other seeking seamen. (ECF 19, p. 7, para. 24). Celebrity continued to hold 1700 Filipino seafarers captive in Celebrity's fleet, with another 7,000 held captive by Royal Caribbean Cruise Line and related cruise lines. (ECF 19, p. 9, para. 31).

In addition to holding the seafarers hostage, Celebrity engaged in a campaign of disinformation and deception in an effort to avoid mutiny or rebellion onboard. (ECF 19, para. 35). Furthermore, Celebrity told the named-Plaintiffs that their flights home were repeatedly delayed from April 2 through May. (*Id.*, para. 41).

Crewmembers on the various vessels engaged in hunger strikes, and there were **multiple suicides**. (*Id.*, para. 52). (Emphasis added). Surely, conduct resulting in multiple suicides is "outrageous."

<u>**CONCLUSION**</u>

The District Court erroneously granted Celebrity's Motion to Dismiss Plaintiffs' intentional tort claims for false imprisonment and intentional infliction of emotional distress. This Court should reverse.

<u>**CERTIFICATE OF COMPLIANCE**</u>

I certify that this brief complies with the type-volume limitation set forth in FRAP 32(a)(7)(B). This brief contains 4,281 words.

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on February 22, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

**PHILIP D. PARRISH, P.A.**
*Counsel for Appellants*
7301 SW 57th Court, Suite 430
Miami, Florida 33143
Tel: 305-670-5550/Fax: 305-670-5552
Email: phil@parrishappeals.com
       betty@parrishappeals.com

By:  */s/ Philip D. Parrish*
       Philip D. Parrish, Esquire
       Florida Bar No. 0541877

## SERVICE LIST

Scott D. Ponce, Esq.
Alex M. Gonzalez, Esq.
Holland & Knight LLP
701 Brickell Avenue, Suite 3300
Miami, FL  33131
Tel. 305-374-8500/Fax 305-789-7799
sbohrer@hklaw.com
alex.gonzalez@hklaw.com
sponce@hklaw.com
***Counsel for Defendant/Appellees***

Raul G. Delgado, II, Esq.
Delgado Trial Attorneys
10661 N. Kendall Drive, Suite 218
Miami, FL  33176
Tel. 305-927-3678
Toll Free: 1-877-372-0817
raul@cruiselawyermiami.com
Raulsr@cruiselawyermiami.com
filing@cruiselawyermiami.com
***Counsel for Plaintiffs/Appellants***