IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

—————————————————

NO. 23-12476-G

—————————————————

RYAN MAGLANA and FRANCES KARL BUGAYONG,

Plaintiffs/Appellants,

vs.

CELEBRITY CRUISES INC.,

Defendant/Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

—————————————————————————————————————

APPELLEE'S RESPONSE BRIEF

—————————————————————————————————————

AMIT AGARWAL
Holland & Knight LLP
315 South Calhoun Street
Suite 600
Tallahassee, Florida 32301
(850) 224-7000 (telephone)

ALEX M. GONZALEZ
SCOTT D. PONCE
Holland & Knight LLP
701 Brickell Avenue
Suite 3300
Miami, Florida 33131
(305) 374-8500 (telephone)

Attorneys for Appellee

<u>CERTIFICATE OF INTERESTED PERSONS</u>
<u>AND CORPORATE DISCLOSURE STATEMENT</u>

Appellee, pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Eleventh Circuit Rule 26.1-1, identifies the following people and entities as having an interest in the outcome of this appeal:

Amit Agarwal, counsel for defendant/appellee

Honorable Jacqueline Becerra, United States Magistrate Judge

Francis Karl Bugayong, plaintiff/appellant

Celebrity Cruises Inc., defendant/appellee

Raul G. Delgado, II, counsel for plaintiffs/appellants

Delgado Trial Attorneys, counsel for plaintiff/appellants

Michael John Dono, counsel for defendant/appellee

Alex M. Gonzalez, counsel for defendant/appellee

Annalisa Gutierrez, counsel for defendant/appellee

Evan S. Gutwein, counsel for defendant/appellee

Jerry D. Hamilton, counsel for defendant/appellee

Hamilton, Miller & Birthisel, LLP, counsel for defendant/appellee

Holland & Knight LLP, counsel for defendant/appellee

Lauren Vanessa Lopez, counsel for defendant/appellee

Ryan Maunes Maglana, plaintiff/appellant

Honorable Jose E. Martinez, United States District Judge

Philip D. Parrish, counsel for plaintiffs/appellants

Philip D. Parrish, P.A., counsel for plaintiffs/appellants

Scott D. Ponce, counsel for defendant/appellee

Royal Caribbean Cruises Ltd. (Ticker: RCL)

Celebrity Cruises Inc. is a wholly owned subsidiary of Royal Caribbean Cruises Ltd.

## STATEMENT REGARDING ORAL ARGUMENT

Appellee respectfully suggests that the facts and legal arguments are adequately presented in the briefs and record before this Court and that the decisional process would not be significantly aided by oral argument.

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS ..........................................................i

STATEMENT REGARDING ORAL ARGUMENT ............................................. iii

TABLE OF CONTENTS...........................................................................................iv

TABLE OF AUTHORITIES ....................................................................................vi

STATEMENT OF JURISDICTION.........................................................................1

STATEMENT OF THE ISSUES..............................................................................1

STATEMENT OF THE CASE..................................................................................2

STATEMENT OF THE FACTS ...............................................................................3

SUMMARY OF THE ARGUMENT ......................................................................13

ARGUMENT ..........................................................................................................16

     I.     THE DISTRICT COURT CORRECTLY DISMISSED THE CLAIM
            FOR FALSE IMPRISONMENT ......................................................16

           A.   The District Court Correctly Concluded That The Amended
              Complaint Did Not Properly Allege A Claim For False
              Imprisonment.......................................................................................17

           B.   There Are Additional Reasons Supporting The Dismissal
              With Prejudice Of The Claim For False Imprisonment......................25

     II.    THE TRIAL COURT CORRECTLY DISMISSED WITH
            PREJUDICE COUNT V, FOR IIED, BECAUSE IT FAILED
            TO STATE A CLAIM ........................................................................29

CONCLUSION .......................................................................................................34

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) .......................................35

CERTIFICATE OF SERVICE ..................................................................................36

Page

**FEDERAL DECISIONS**

*Access Now, Inc. v. Southwest Airlines Co.,*
    385 F.3d 1324 (11th Cir. 2004) ................................................... 29

*Archer v. City of Winter Haven,*
    846 F. App'x 759 (11th Cir. 2021) ........................................ 18, 25

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...................................................................... 21

*Baxter v. Roberts,*
    54 F.4th 1241 (11th Cir. 2022) .................................................... 21

*Boyle v. City of Pell City,*
    866 F.3d 1280 (11th Cir. 2017) ................................................... 13

*Brockington v. Certified Electric, Inc.,*
    903 F.2d 1523 (11th Cir. 1990) ................................................... 17

*Butts v. ALN Group, LLC,*
    512 F.Supp.3d 1301 (S.D. Fla. 2021) .......................................... 18

*Christmas v. Harris Cnty., Georgia,*
    51 F.4th 1348 (11th Cir. 2022) .................................................... 12

*Coastal Fuels Marketing, Inc. v. Florida Express Shipping Co., Inc.,*
    207 F.3d 1247 (11th Cir. 2000) ................................................... 17

*Dagi v. Delta Airlines, Inc.,*
    961 F.3d 22 (1st Cir. 2020) .......................................................... 19

*Day v. Taylor,*
    400 F.3d 1272 (11th Cir. 2005) ..................................................... 6

*East River Steamship Corp. v. Transamerica Delaval, Inc.*,
 476 U.S. 858 (1986)..............................................................................17

*Elbaz v. Royal Caribbean Cruises Ltd.*,
 2017 WL 3773721 (S.D. Fla. Jan. 12, 2017).........................................33, 34

*Garcia v. Carnival Corp.*,
 838 F.Supp.2d 1334 (S.D. Fla. 2012)................................................30, 31, 33

*Griffin Industries, Inc. v. Irvin*,
 496 F.3d 1189 (11th Cir. 2007) ....................................................................27

*Hart v. United States*,
 894 F.2d 1539 (11th Cir. 1990) ....................................................................30

*Henning v. Walmart Stores Inc.*,
 738 F. App'x 992 (11th Cir. 2018)................................................................18

*Henley v. Payne*,
 945 F.3d 1320 (11th Cir. 2019) ...............................................................13, 25

*Horsley v. Feldt*,
 304 F.3d 1125 (11th Cir. 2002) ......................................................................6

*In re: Club Associates*,
 956 F.2d 1065 (11th  Cir. 1992) ...................................................................29

*Jacobs v. Tempur-Pedic, International, Inc.*,
 626 F.3d 1327 (11th Cir. 2010) ....................................................................21

*Johnson v. Barnes & Noble Booksellers, Inc.*,
 437 F.3d 1112 (11th Cir. 2006) ...............................................................20, 21

*Kantrow v. Celebrity Cruises Inc.*,
 510 F.Supp.3d 1311 (S.D. Fla. 2020)................................................30, 32, 34

*Macias v. Celebrity Cruises Inc.*,
 2021 WL 5853585 (S.D. Fla. Nov. 19, 2021) ...............................................32

*Maglana v. Celebrity Cruises Inc.*,
　2022 WL 3134373 (11th Cir. 2022) .................................................2, 4, 8, 27,

*Markham v. Carnival Corp.*,
　2012 WL 12866787 (S.D. Fla. Dec. 3, 2012).........................................33, 34

*Pope v. Rostraver Shop 'N Save*,
　389 F. App'x 151 (3d Cir. 2010) ....................................................19

*Richards v. Royal Caribbean Cruises Ltd.*,
　118 F.Supp.2d 150 (D.P.R. 1999) ....................................................18

*Rubio v. Lopez*,
　445 F. App'x at 175 ....................................................31

*Simmons v. Peavey-Welsh Lumber Co.*,
　113 F.2d 812 (5th Cir. 1940) ....................................................27

*Skokan v. Royal Caribbean Cruises Ltd.*,
　2018 WL 5044603 (S.D. Fla. Oct. 17, 2018) ....................................................20

*Sutton v. Royal Caribbean Cruises Ltd.*,
　774 F. App'x 508 (11th Cir. 2019)....................................................18

*Tekle v. United States*,
　511 F.3d 839 (9th Cir. 2007) ....................................................18

*Tesoriero v. Carnival Corp.*,
　965 F.3d 1170 (11th Cir. 2020) ....................................................17

*Vamper v. United Parcel Service, Inc.*,
　14 F.Supp.2d 1301 (S.D. Fla. 1998) ....................................................32

*Wallis v. Princess Cruises, Inc.*,
　306 F.3d 827 (9th Cir. 2002) ....................................................30, 31

*Willis v. Royal Caribbean Cruises Ltd.*,
　77 F.4th 1332 (11th Cir. 2023) ....................................................17

*Wu v. NCL (Bahamas) Ltd.*,
    2017 WL 1331712 (S.D. Fla. Apr. 11, 2017)....................................30, 32, 34

*Zamora v. City of Miami*,
    2024 WL 1289617 (Fla. 3d DCA Mar. 27, 2024).........................................18

## STATE DECISIONS

*Harder v. Edwards*,
    174 So.3d 524 (Fla. 4th DCA 2015)........................................................18, 25

*Rivers v. Dillards Dept. Store, Inc.*,
    698 So.2d 1328 (Fla. 1st DCA 1997).........................................................21

## FEDERAL STATUTES

18 U.S.C. §1001 ...............................................................................................5

28 U.S.C. §1291 ...............................................................................................1

28 U.S.C. §§1331 ..............................................................................................1

28 U.S.C. §1333 ...............................................................................................1

28 U.S.C. §1343 ...............................................................................................1

## FEDERAL REGISTER

85 Fed. Reg. 16628 (March 24, 2020)..................................................3, 4

## TREATISES

Restatement (Second) of Torts § 46 (1965)..............................................30

# STATEMENT OF JURISDICTION

The amended complaint alleged that the district court had subject matter jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1343 because some of the claims that the plaintiffs asserted arose under federal statutes.  DE 19 at ¶5. The amended complaint alternatively alleged that other of the claims arose under the general maritime law of the United States and that the district court could exercise admiralty jurisdiction over them pursuant to 28 U.S.C. §1333.  *Id.* at ¶6.  Following this Court's remand of this action, the only purported claims that remained were the ones that the plaintiffs alleged arose under general maritime law.  *Id.* at ¶7.

This Court has jurisdiction over the appeal pursuant to 28 U.S.C. §1291 because the district court's order dismissing with prejudice the amended complaint disposed of all parties' claims.  DE 83.

# STATEMENT OF THE ISSUES

1.  Whether the district court correctly concluded that the amended complaint failed to state a claim for false imprisonment.

2.  Whether the district court correctly concluded that the amended complaint failed to state a claim for intentional infliction of emotional distress.

# STATEMENT OF THE CASE

## Nature Of The Case

At the time that the district court dismissed the amended complaint, this was an action seeking money damages in connection with maritime claims for false imprisonment and intentional infliction of emotional distress.

## The Course Of The Proceedings And The Disposition Below

The plaintiffs' five-count amended complaint purported to state claims for "preliminary mandatory injunction" (Count I), false imprisonment (Count II), employment discrimination (Count III), unpaid wages and penalty wages (Count IV), and intentional infliction of emotional distress ("IIED") (Count V). DE 19. The defendant moved to compel arbitration of all five claims. DE 26, 27, 25. The district court granted the motion and compelled arbitration. DE 46.

The plaintiffs appealed, but only to the extent that the district court compelled arbitration of the claims for false imprisonment (Count II) and IIED (Count V). *See Maglana v. Celebrity Cruises Inc.*, No. 20-14206, 2022 WL 3134373, at *3 (11th Cir. Aug. 5, 2022) (The plaintiffs-appellants "appeal the order compelling arbitration of the two intentional tort claims."). This Court reversed, and remanded those two claims to the district court. *Id.* In doing so, the Court explained that those claims, pursuant to plaintiffs' own stipulation, were limited to the 58 days between March 31 and May 26, 2020. *Id.* at **1, 5 n.5.

Following remand, the defendant moved to dismiss those two claims for failure to state a claim. DE 55, 56, 57. The district court granted the motion and dismissed the claims with prejudice. DE 83. The plaintiffs timely filed a notice of appeal. DE 85.

## STATEMENT OF THE FACTS

### COVID-19, Quarantine, And The CDC's Rules
### Prevent Crewmembers From Leaving Cruise Ships To Return Home

This case arises from scariest part of the COVID-19 pandemic – its onset. The strain of the virus that was circulating was the most virulent and deadly strain. There was no vaccine. Johns Hopkins was tracking worldwide deaths in the hundreds of thousands. The world shut down in an ultimately unsuccessful attempt to slow the virus's spread and, particularly important here, the governments of the world closed their countries' borders and locked down international travel.

The U.S. Centers for Disease Control (CDC) issued a No Sail Order on March 14, 2020. DE 19 (Amended Complaint) at ¶29; *see also* 85 Fed. Reg. 16628 (March 24, 2020) ("This action was effective March 14, 2020."). The No Sail Order shut down cruise ship operations at U.S. ports and effectively prevented foreign crew members from leaving ships that were docked at U.S. ports and entering the country.

The appellants are Ryan Maglana and Frances Bugayong. They were the plaintiffs below. Plaintiffs are citizens of the Philippines. DE 19 at ¶¶2-3. The appellee is Celebrity Cruises Inc. ("Celebrity"). Celebrity was the defendant below.

When the No Sail Order was issued, Plaintiffs were working aboard a cruise ship operated by Celebrity that is called *Millennium*. DE 19 at ¶¶2-3. The ship was docked in San Diego, California beginning on March 20, 2020. *Id.* at ¶33.

Celebrity terminated Plaintiffs' employment on March 30, 2020 because they stole an expensive bottle of liquor from the ship. *Id.* at ¶¶36-37; *see also Maglana*, 2022 WL 3134373, at *1. In accordance with the terms of the applicable collective bargaining agreement, Plaintiffs would normally have been immediately repatriated – at their expense – to the Philippines from California. DE 19 at ¶¶36-37; *see also Maglana*, 2022 WL 3134373, at *1.

However, these were not normal times because the No Sail Order made it impossible for Plaintiffs to immediately leave the ship and enter the U.S. in order to travel to the Philippines. DE 19 at ¶29; 85 Fed. Reg. 16628 (March 24, 2020). The amended complaint did not allege otherwise. Thus, as of March 31, 2020 – which is the first day of the 58-day period from which the claims arose – United States law prohibited Plaintiffs from leaving the ship. *See* 85 Fed. Reg. 16628 (March 24, 2020).

On April 23, 2020 – 23 days into the 58-day period – the CDC first announced that crew members on ships docked at United States ports could disembark their vessels and enter the U.S. in order to return home "'*if* cruise lines submit a signed attestation stating that they have complied with requirements to safely disembark their crew members.'" DE 19 at ¶43 & 12 n.5 (emphasis added).

The attestation was required to be signed by a cruise line's (1) President and Chief Executive Officer; (2) Chief Ethics and/or Compliance Officer; *and* (3) highest-ranking Medical Officer. Those cruise line executives were required to certify – subject to the imposition of personal criminal liability, including imprisonment, as provided in 18 U.S.C. §1001 – that each and every one of the cruise line's thousands of shipboard crew would follow an exhaustive list of rules until each employee reached his or her house or next work-posting.

More specifically, the executives were required to attest, subject to the imposition of criminal liability, that they had "ensured" that each of the thousands of disembarking crew members

- will not stay overnight in a hotel before the flight or at any point until they reach their final destination
- will not use public transportation (including taxis or ride-share services) to get to the airport/charter flight
- will not enter the public airport terminal
- will not take commercial aircraft after an initial charter flight
- will not have a transportation layover exceeding 8 hours
- will have no interaction with the public during their travel home or to their new duty station (e.g., rental car companies, restaurants, other public areas, etc.)

DE 55-1 at 2.[1]

Notably, executives could be subject to criminal liability for attestations that did not include any deliberate falsehoods—and perhaps even for inadvertent omissions: The attestation required them to "acknowledge that any false *or misleading statements or omissions* may endanger health and safety, including but not limited to the loss of lives and other irreparable harm. Therefore, false o*r misleading statements or omissions* may result in criminal and civil actions for fines, penalties, damages, and imprisonment." DE 55-1 at 2 (emphases added).

As the amended complaint recognized, Royal Caribbean's executives were aware of—and made public statements expressing concern about—the "threat" that they could be subject to "criminal prosecution" for incorrectly certifying that they had satisfied the CDC's requirements for safely disembarking crew members and that individual crew members followed the CDC directives that applied to them. DE 19 at ¶50.

---

[1] Celebrity attached the attestation to its motion to dismiss because the amended complaint expressly quotes (and even includes a link to) that document (DE 19 at ¶43 & 12 n.5), the authorities governing Plaintiffs' ability to leave the ship are central to their claims, and Plaintiffs do not and cannot dispute the authenticity of the document. *See, e.g., Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (citing *Horsley*, 304 F.3d at 1134). As noted by the district court, Plaintiffs did not challenge the district court's ability to consider the document. DE 83 at 8.

For example, according to a newspaper article that Plaintiffs cited in and linked to the amended complaint, which article quotes one of the executives who would be required to sign the attestation, the fact that the executives at Celebrity and its parent corporation, Royal Caribbean Cruises Ltd., would be required to certify – subject to the imposition of personal criminal liability, including imprisonment – that each of the thousands of crew members would abide by the CDC's rules at all times while traveling from the United States to their houses abroad, caused concern and gave "pause" to the executives. DE 19 at ¶50 & n.7 (citing and including link to *Miami Herald* article entitled "Royal Caribbean Executives agree to the CDC's terms for disembarking crew stuck on ships"). Nonetheless, and in the "hope[] that the threat of criminal prosecution might be removed," Celebrity informed its crew on May 3, 2020, that it would sign the attestation. *Id.*

Getting the foreign crew members off the ships and into the United States was only one-half of the equation for repatriation. The other half of the equation was that – in a time when countries had sealed their borders in order to slow or stop the spread of COVID-19 – the crew members' countries needed to agree to admit people who were coming off a cruise ship. The amended complaint contained absolutely no allegations regarding when the Philippines began permitting its citizens to reenter that country after having been aboard cruise ships.

That is critically important because the CDC would not permit crew members to get off the ships and then remain in the United States until such time as the crew members' countries would admit them. Instead, the CDC required the crew members to stay on the ships until they could be taken directly to transportation that would take them out of the Unites States and ultimately to their countries. DE 55-1. Under the CDC's rules, crew members were prohibited from staying in a hotel prior to boarding their transportation, prohibited from interacting with the public, and could not have a transportation layover exceeding 8 hours. *Id.*

On May 26, 2020, Plaintiffs and 200 other Filipino citizens aboard the *Millennium* were flown to the Philippines on a charter flight arranged and paid for by Celebrity. DE 10; *see also Maglana*, 2022 WL 3134373, at *2.

### Celebrity's Motion To Dismiss The Amended Complaint

Against that backdrop – and with respect to the two claims remaining in the amended complaint – Plaintiffs alleged that Celebrity falsely imprisoned them on the ship following the termination of their employment (Count II) and, in doing so, intentionally inflicted emotional distress upon them (Count V), because it was not until May 26, 2020 that Plaintiffs disembarked the ship in order to travel to the Philippines on a charter flight that was arranged and paid for by Celebrity.

Celebrity moved to dismiss the claims for false imprisonment and IIED for failure to state a claim. DE 55.

As to <u>Count II</u>, for false imprisonment, Celebrity's motion to dismiss addressed how the CDC's rules and regulations changed over the 58-day period from which the claim arose – all of which was apparent from the face of the amended complaint – and Celebrity showed how the amended complaint failed to state a claim for false imprisonment as to any portion of the 58-day period. DE 55. More specifically, Celebrity argued that Plaintiffs failed to state a claim because, in light of the circumstances alleged in the amended complaint, Plaintiffs did not and could not allege that their remaining aboard the ship was unlawful, without legal authority, or unreasonable and unwarranted.

As to <u>Count V</u>, for IIED, Celebrity argued that Plaintiffs failed to state a claim because, in light of the circumstances alleged in the amended complaint, Plaintiffs did not and could not allege that their remaining aboard the ship for those 58 days was sufficiently outrageous to state a claim for IIED. Celebrity also argued that Plaintiffs' allegations that they were exposed to COVID-19 during the 58 days they remained aboard the ship were insufficient to state a claim because every decision addressing the issue holds that being exposed to illness – and even contracting illness – does not constitute IIED.

Plaintiffs' response to Celebrity's motion to dismiss was extremely limited. DE 56.

On the issue of <u>false imprisonment</u> (Count II), Plaintiffs did not address the impact of the CDC's rules on why Plaintiffs remained on the ship for those 58 days, including that for some of that time the CDC's rules flat-out prohibited them from leaving the ship. Instead, Plaintiffs argued that a detention need not be unlawful in order to constitute false imprisonment. And although every fact referred to in Celebrity's motion to dismiss was accompanied by a citation to the paragraph of the amended complaint from which the fact was taken, Plaintiffs also argued that the motion to dismiss "reads like a motion for summary judgment" where Celebrity "argues its own set of facts, rather than the allegations of the [Amended] Complaint, which is what the Court must review in ruling on a motion to dismiss."

Last, Plaintiffs noted that during oral argument for the appeal relating to the issue of arbitration and arbitrability – which had nothing to do with whether the amended complaint stated a claim for false imprisonment – one of the judges on the panel said this in an exchange with Plaintiffs' counsel: ". . . you say 'they won't let us, they held us captive, we couldn't escape. It's classic false imprisonment.'" In their response to the motion to dismiss, Plaintiffs said that statement from oral argument was "the Eleventh Circuit's evaluation of the allegations in the Plaintiffs' Amended Complaint." DE 56 at 5.

On the issue of <u>IIED</u>, Plaintiffs did not dispute that whether conduct is sufficiently outrageous to state a claim for IIED is a question of law for the Court to

decide, did not address any of the authorities Celebrity cited for the proposition that the conduct alleged here was not sufficiently outrageous, and did not provide any argument or explanation for why the amended complaint plausibly alleged sufficiently outrageous conduct. DE 56 at 13-14. Instead, Plaintiffs offered a conclusory assertion that they had "properly plead[ed]" a claim for IIED and argued that the district court should let the evidentiary record develop and revisit the issue later in the proceedings. *Id.*

### The District Court's Order Granting Celebrity's Motion To Dismiss, And Dismissing The Amended Complaint With Prejudice

The district court granted Celebrity's motion to dismiss, and dismissed with prejudice Counts II and IV of Plaintiffs' amended complaint, which were the only remaining claims. DE 83.

On the claim for <u>false imprisonment</u> (Count II), the district court ruled that the amended complaint failed to state a claim because it did not properly allege the unlawfulness of the detention. The district court wrote that although the amended complaint

> allege[s] that Defendant's action of holding [Plaintiffs] and the additional Filipino crew members onboard the *Millennium* during the beginning of the COVID-19 crisis was "clearly in violation of US and international law" [...] [t]here is no mention made by Plaintiffs of what specific federal or international laws Defendant violated."

DE 83 at 11 (quoting DE 19 at ¶¶82-83).  The district court ruled that the absence of such allegations – together with the CDC regulations that were in effect at the time, including the No Sail Order that prohibited crewmembers from leaving the ship – meant that Plaintiffs failed to properly allege the unlawfulness of their detention, which is an essential element of the claim.  *Id.*

On the claim for <u>IIED</u> (Count V), the district court ruled that even accepting as true the amended complaint's allegations regarding Celebrity's conduct, the alleged conduct did not rise to the level of outrageousness that is necessary to state a claim for IIED.  *Id.* at 8-11.  The district court's order also cited decisions from other district courts holding that being exposed to COVID-19, even when accompanied by misrepresentations about the presence of the virus on a ship, does not give rise to IIED.

Plaintiffs timely filed their notice of appeal of the district court's order dismissing their amended complaint.[2]  DE 85.

---

[2] Plaintiffs argued below that Celebrity waived its ability to move to dismiss for failure to state a claim because Celebrity first moved to compel arbitration without also arguing that the amended complaint failed to state a claim.  DE 56 at 2-3.  The district court rejected that argument.  DE 83 at 5-6.  Plaintiffs have forfeited that issue by failing to raise it in their initial brief on appeal.  *See, e.g.*, *Christmas v. Harris Cnty., Georgia*, 51 F.4th 1348, 1354 (11th Cir. 2022).

## Standard of Review

"We review de novo a district court's order granting a motion to dismiss for failure to state a claim." *Boyle v. City of Pell City*, 866 F.3d 1280, 1286 (11th Cir. 2017). "[T]his Court may affirm on any basis in the record, regardless of whether the District Court actually relied upon that basis in dismissing the plaintiff's claim." *Henley v. Payne*, 945 F.3d 1320, 1333 (11th Cir. 2019).

## SUMMARY OF THE ARGUMENT

The district court correctly dismissed the claim for false imprisonment (Count II) because it failed to state a claim. Plaintiffs' burden was to plead the unlawfulness of them staying on the ship for 58 days after their employment was terminated at the outset of the COVID-19 quarantine. The district correctly ruled that although the amended complaint contained the threadbare and conclusory statement that Plaintiffs staying on the ship was "clearly in violation of US and international law," the amended complaint did not identify the laws that Celebrity supposedly violated. DE 83 at 11. Plaintiffs' failure to identify those laws – together with the CDC's No Sail Order affirmatively preventing Plaintiffs from leaving the ship when their employment was terminated – meant Plaintiffs failed to state a claim for false imprisonment. *Id.*

Plaintiffs' three arguments to the contrary fail. First, Plaintiffs argue that the lawfulness of a detention an affirmative defense that cannot be considered on a

motion to dismiss.  Br. at 10-12.  This argument fails because the unlawfulness of the supposed detention is an essential element of a claim for false imprisonment, and whether Plaintiffs alleged facts supporting that element is squarely within the scope of a motion to dismiss for failure to state a claim.

Second, Plaintiffs argue that Celebrity's motion to dismiss was more like a motion for summary judgment in which Celebrity argued its own set of facts.  Br. at 14.  This argument fails because every fact that was addressed in the motion to dismiss was accompanied by a citation to the paragraph of the amended complaint in which that fact appears.  Tellingly, Plaintiffs do not identify any fact that was addressed in the motion to dismiss – or relied upon by the district court – that does not appear in the amended complaint.

Third, Plaintiffs point to a single paragraph of the amended complaint to argue that contrary to what the district court wrote, they identified the laws that Celebrity supposedly violated.  Br. at 14.  This argument fails because that paragraph refers only to "the laws of this country, International law and the Maritime Labor Convention of 2006 and its amendments."  That does not identify the domestic or foreign laws that Celebrity supposedly violated, or even the supposedly relevant provisions of the Maritime Labor Convention.

Additionally, there are other reasons supporting dismissal that appear in the record, and this Court can affirm the dismissal on the basis of those reasons even though the district court did not rely upon them.

As argued in Celebrity's motion to dismiss, even after the CDC lifted the No Sail Order and created highly regulated and limited circumstances in which foreign crewmembers could enter the United States in order to travel to their homes, Plaintiffs remaining on the ship still was not unlawful, without legal authority, or unreasonable and unwarranted under the circumstances, as is required to state a claim for false imprisonment. DE 55 at 8-10. Plaintiffs did not address those arguments in their response to the motion to dismiss, which means that they cannot address those arguments on appeal.

The district court also correctly dismissed the claim for IIED. The district court ruled that even accepting Plaintiffs' allegations as true, they do not rise to the level necessary to state a claim for IIED. DE 83 at 8-11. The district court also addressed recent decisions that dismissed COVID-19-related IIED claims for failure to state a claim. *Id.* The only argument that Plaintiffs made below, which is the only argument that they are permitted to raise on appeal, was to cite an unpublished district court order in which that district judge declined to dismiss a claim for IIED in order to allow the evidentiary record to develop and then revisit the issue later in

the litigation. That simply does not provide a basis for finding, in this case, that the district court erred in dismissing Plaintiffs' claim for IIED.

This Court should affirm the district court's order dismissing Plaintiff's claims for false imprisonment (Count II) and IIED (Count V).

## ARGUMENT

## I.    THE DISTRICT COURT CORRECTLY DISMISSED THE CLAIM FOR FALSE IMPRISONMENT.

Count II of the amended complaint was for false imprisonment. The district court dismissed it with prejudice because it failed to state a claim. The district court ruled – correctly – that the amended complaint did not identify the laws that were violated by Plaintiffs remaining on the ship during the onset of the COVID-19 pandemic and quarantine, especially in light of the CDC's No Sail Order that, for a time, affirmatively prohibited them from leaving the ship. That is a sufficient basis to affirm the dismissal with prejudice of Count II. However, there are additional reasons in the record supporting dismissal.

Even after the CDC changed its rules so that foreign crewmembers could start leaving their ships and entering the United States in order to travel to their home countries – which happened 23 days into the 58-day period from which the false imprisonment claim arises – the circumstances alleged in the amended complaint show that the time it took Celebrity to arrange to get Plaintiffs home was not

unlawful, without legal authority, or unreasonable and unwarranted under those circumstances.

## A. The District Court Correctly Concluded That The Amended Complaint Did Not Properly Allege A Claim For False Imprisonment.

The amended complaint alleged that the false imprisonment claim "arise[s] under the General Maritime law of the United States . . . ." DE 19 at ¶7. "Drawn from state and federal sources, the general maritime law is an amalgam of traditional common-law rules, modifications of those rules, and newly created rules. And in the absence of an established federal maritime rule, we may borrow from a variety of sources in establishing common law admiralty rules to govern maritime liability where deemed appropriate." *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1177-78 (11th Cir. 2020) (internal citations and quotation marks omitted); *see also Brockington v. Certified Electric, Inc.*, 903 F.2d 1523, 1529 n.2 (11th Cir. 1990) (quoting *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 865 (1986)) (same).

"Without a controlling maritime principle . . . 'courts may apply state law provided that the application of state law does not frustrate national interests in having uniformity in admiralty law.'" *Willis v. Royal Caribbean Cruises Ltd.*, 77 F.4th 1332, 1338 (11th Cir. 2023) (quoting *Coastal Fuels Marketing, Inc. v. Florida*

*Express Shipping Co., Inc.*, 207 F.3d 1247, 1251 (11th Cir. 2000)); *see also Sutton*

*v. Royal Caribbean Cruises Ltd.*, 774 F. App'x 508, 513 n.7 (11th Cir. 2019) (same).

The district court drew upon Florida law to supply the elements of the claim

for false imprisonment, and Plaintiffs do not argue in their opening brief that the

district court erred in doing so.[3]  Under Florida law:

> To state a cause of action for false imprisonment, the plaintiff
> must establish: '1) the unlawful detention and deprivation of
> liberty of a person 2) against that person's will 3) without legal
> authority or "color of authority" . . . 4) which is unreasonable and
> unwarranted under the circumstances.'

*Archer v. City of Winter Haven*, 846 F. App'x 759, 763 (11th Cir. 2021) (quoting

*Harder v. Edwards*, 174 So.3d 524, 530 (Fla. 4th DCA 2015)) (ellipses in original);

*accord Henning v. Walmart Stores Inc.*, 738 F. App'x 992, 998 (11th Cir. 2018);

*Zamora v. City of Miami*, No. 3D22-1336, 2024 WL 1289617, at *1 (Fla. 3d DCA

Mar. 27, 2024); *see also Tekle v. United States*, 511 F.3d 839, 854 (9th Cir. 2007)

(internal citations and quotation marks omitted) (applying California law) ("Under

California law, false arrest, or false imprisonment, is the unlawful violation of the

---

[3] It is worth noting that a question exists as to whether whether maritime law recognizes a claim for false imprisonment. *See, e.g., Richards v. Royal Caribbean Cruises Ltd.*, 118 F.Supp.2d 150, 152-53 (D.P.R. 1999) ("[F]alse imprisonment is not the type of traditional maritime tort which general admiralty law embraces."); *but see Butts v. ALN Group, LLC*, 512 F.Supp.3d 1301, 1308 (S.D. Fla. 2021) ("The Court disagrees that the tort of false imprisonment is not available under general admiralty law.").  For the purposes of its motion to dismiss, Celebrity assumed that maritime law recognizes a claim for false imprisonment.  DE 55 at 6 n.2.

personal liberty of another."); *Dagi v. Delta Airlines, Inc.,* 961 F.3d 22, 29-30 (1st Cir. 2020) (applying Massachusetts law) (false imprisonment requires an unjustified detention); *Pope v. Rostraver Shop 'N Save*, 389 F. App'x 151, 152 (3d Cir. 2010) (applying Pennsylvania law) ("False imprisonment in Pennsylvania is the unlawful detention of another person").

The district court dismissed the claim with prejudice, ruling that although the amended complaint contained the conclusory statement that Plaintiffs staying on the ship for 58 days after their employment was terminated was "'clearly in violation of US and international law,'" "[t]here is no mention made by Plaintiffs of what specific federal or international laws Defendant violated." DE 83 at 11 (quoting DE 19 at ¶¶82-83). The district court ruled that the absence of such allegations, together with the CDC's No Sail Order that affirmatively prohibited Plaintiffs from leaving the ship, meant that Plaintiffs did not and could not state a claim for false imprisonment. *Id.*

In their brief, Plaintiffs argue that the district court erred for three reasons. First, they argue that whether a detention was lawful is an affirmative defense, and not an element of the claim. Br. at 10-12. Second, they argue that Celebrity's motion to dismiss was more like a motion for summary judgment, in which Celebrity "argued its own set of facts, rather than the allegations of the [amended] Complaint, which is what the District Court was required to review in ruling on the motion to

dismiss." *Id.* at 14. Third, they argue that "contrary to the District Court's ruling, Plaintiffs did allege the violation of various laws." *Id.* Each argument fails.

On the first argument, Plaintiffs say that the issue of the lawfulness of the supposed detention is an affirmative defense that the district court should not have considered in connection with Celebrity's motion to dismiss. Br. at 10. Yet, Plaintiffs simultaneously concede in at least two places in their brief that a *plaintiff* has the burden of pleading (and later proving) the unlawfulness of the supposed detention. Br. at 10-11 (citing *Johnson v. Barnes & Noble Booksellers, Inc.*, 437 F.3d 1112, 1116 (11th Cir. 2006)) ("The Plaintiff is required only to establish imprisonment contrary to his will *and the unlawfulness of the detention.*") (emphasis added); *id.* at 13 (quoting *Skokan v. Royal Caribbean Cruises Ltd.*, 2018 WL 5044603, at *5 (S.D. Fla. Oct. 17, 2018)) ("False imprisonment is 'the unlawful restraint of the person against his will, the gist of which is the unlawful detention of the Plaintiff and the deprivation of his liberty.").

Thus, the district court was *not* considering an affirmative defense when it ruled that although the amended complaint contained the threadbare statement that Plaintiffs staying on the ship was "clearly in violation of US and international law," the amended complaint failed to state a claim because it did not identify the laws that supposedly made it unlawful. Instead, the district court was appropriately considering whether Plaintiffs satisfied their burden to plead facts supporting the

unlawfulness of their supposed detention, which was an essential element of their claim for false imprisonment. *See Baxter v. Roberts*, 54 F.4th 1241, 1271 (11th Cir. 2022) ("The key aspects of false imprisonment are imprisonment contrary to the plaintiff's will and the unlawfulness of the detention."); *Jacobs v. Tempur-Pedic, International, Inc.*, 626 F.3d 1327, 1333 (11th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) ("'[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'") (brackets in original).

Indeed, the decisions that Plaintiffs cite where courts considered lawfulness as an affirmative defense arose in the specific context of a merchant asserting that it had probable cause to effectuate a citizen's arrest of a suspected shoplifter. *See Rivers v. Dillards Dept. Store, Inc.*, 698 So.2d 1328, 1331-32 (Fla. 1st DCA 1997) ("In a false arrest action . . . the plaintiff is required only to establish imprisonment contrary to his will and the unlawfulness of the detention. . . . Probable cause may then be raised and proved by the defendant, as an affirmative defense.") (ellipses in original; internal citation and quotation marks omitted); *Johnson*, 437 F.3d at 1116 (citing *Rivers*, 698 So.2d at 1331). That simply is not the context that exists here.

Plaintiffs are also wrong when they contend that Celebrity's motion to dismiss "argued its own set of facts, rather than the allegations of the [amended] Complaint,"

thereby exceeding the scope of a motion to dismiss for failure to state a claim.  Br. at 14.  Tellingly, Plaintiffs do not identify a single fact that Celebrity proffered in the motion to dismiss – or, more importantly, that the district court cited in its order – that was not taken directly from the amended complaint or from a document incorporated by reference into, or linked in, the amended complaint.

In an introductory section of their brief, Plaintiffs cite various pages of Celebrity's motion to dismiss and say that in those pages Celebrity argued "unproven facts" and made "factual" and "fact-based arguments[.]"  Br. at 7-8.  All of the facts that are addressed in those pages of the motion to dismiss – such as the U.S. Government's No Sail Order that affirmatively prohibited Plaintiffs from leaving the ship – are supported by citation to the paragraphs of the amended complaint in which those facts appear.  There is no prohibition against arguing facts in a motion to dismiss when those facts appear in the underlying pleading.

The bottom line is that every fact that was referred to in the motion to dismiss was accompanied by a citation to the paragraph of the amended complaint from which the fact was taken.   Neither Plaintiffs' opening brief nor their response to Celebrity's motion to dismiss identified the "own set of facts" that Celebrity supposedly argued.  The combination of what Plaintiffs failed to allege in the amended complaint, together with what they did allege, showed that they failed to state a claim for false imprisonment.

Last, Plaintiffs argue that the district court erred because "contrary to the District Court's ruling, Plaintiffs did allege the violation of various laws." Br. at 14; *see also* DE 83 at 11 (quoting DE 19 at ¶¶82-83). Plaintiffs' sole support for this argument is paragraph 83 of the amended complaint, which is one of the paragraphs that the district court cited, but that paragraph refers only to "the laws of this country, International law and the Maritime Labor Convention of 2006 and its amendments." Br. at 14. That simply does not specify the laws that Celebrity supposedly violated.[4]

One more point merits a quick mention. In their statement of the case and facts, Plaintiffs write that during the appeal relating to the district court's order compelling arbitration, one of the judges on the panel, "Judge Hull[,] commented at oral argument that the facts in this case presented a classic case of false imprisonment." Br. at 6. Although Plaintiffs' brief does not quote what Judge Hull said during the exchange *with Plaintiffs' appellate counsel*, Plaintiffs' response to the motion to dismiss did, and, according to their homemade transcription of the oral argument, Judge Hull said to Plaintiffs' counsel, ". . . *you say* 'they won't let us, they

---

[4] While vaguely alluding to "the Maritime Labor Convention of 2006 and its amendments," Plaintiffs' amended complaint—like their brief to this Court—does not identify any specific provision of that convention that prohibits the alleged "false imprisonment" or relates in any way to the issue of false imprisonment. *See* DE 19 ¶ 82; Br. 14. Rather, it appears that Plaintiffs cited the convention in support of their claim relating to payment of wages—a claim that does not bear on false imprisonment and is no longer at issue in this case. In addition, Plaintiffs do not and cannot allege that the United States has ratified that convention.

held us captive, we couldn't escape. It's classic false imprisonment.'" DE 56 at 5 (emphasis added).

In their response to the motion to dismiss, Plaintiffs argued that this statement, made during oral argument, was "the Eleventh Circuit's evaluation of the allegations in the Plaintiffs' Amended Complaint." DE 56 at 5. To the extent that Plaintiffs are mentioning this exchange in their brief in an attempt to argue here, as they did below, that this Court has already determined that the amended complaint states a claim for false imprisonment, they are wrong.

At the threshold, it appears that Judge Hull – who was speaking to Plaintiffs' counsel – is repeating Plaintiffs' position ("*you say* . . . 'It's classic false imprisonment'") and not expressing her personal view regarding the allegations. Even if it were the latter, the issue of whether the amended complaint states a claim for false imprisonment was not an issue on appeal and was neither briefed nor considered by the Court, and Judge Hull certainly did not have before her the arguments made in Celebrity's motion to dismiss. And, most fundamentally, a statement made during oral argument by one judge on a three-judge panel simply is not a holding or finding by the Eleventh Circuit on any issue, much less one that was not before the Court.

The district court's order dismissing Count II of amended complaint should be affirmed.

**B.      There Are Additional Reasons Supporting The Dismissal With Prejudice Of The Claim For False Imprisonment.**

The reasons that the district court relied upon in dismissing with prejudice the claim for false imprisonment are sufficient to affirm the dismissal.  However, there are additional reasons supporting dismissal that the district court did not rely upon, and this Court can affirm the dismissal on the basis of those reasons even though the district court did not rely upon them.  *See, e.g., Henley*, 945 F.3d at 1333 ("[T]his Court may affirm on any basis in the record, regardless of whether the District Court actually relied upon that basis in dismissing the plaintiff's claim.").

Celebrity showed in its motion to dismiss (DE 55 at 8-10) that even after the CDC lifted the No Sail Order and implemented rules that provided highly regulated and limited circumstances in which foreign crewmembers could leave their cruise ships and enter the United States in order to travel to their home countries – which occurred 23 days into the 58-day period from which the claim for false imprisonment arises – Plaintiffs remaining on the ship still was not unlawful, without legal authority, or unreasonable and unwarranted under the circumstances, all of which are elements of the claim.  *See, e.g., Archer*, 846 F. App'x at 763 (quoting *Harder*, 174 So.3d at 530) ("To state a cause of action for false imprisonment, the plaintiff must establish: '1) the unlawful detention and deprivation of liberty of a person . . . 3) without legal authority or "color of authority" . . . 4) which is unreasonable and

unwarranted under the circumstances.'"").  Plaintiffs' response to the motion to dismiss did not address any of those arguments.

The amended complaint alleges that on April 23, 2020, the CDC first announced that foreign crew could leave their ships and enter the United States for the purpose of traveling directly to their homes.  DE 19 at ¶43; DE 55-1.  However, even then the U.S. Government would not let a crew member simply leave the ship if that is what he or she wanted to do.  *Id.*  Instead, the Government required the cruise lines' most senior management to certify – subject to the imposition of personal criminal liability, including imprisonment – that the return travel of each and every one of the thousands of crew members leaving the ships to travel abroad would comply with the CDC's various rules that included things such as "hav[ing] no interaction with the public during their travel home or to their new duty station (e.g., rental car companies, restaurants, other public areas, etc.)."  DE 55-1.

As Plaintiffs acknowledged in the amended complaint, Celebrity's executives were aware of—and even made public statements expressing their concern about— the "threat" that they could be subject to "criminal prosecution" for incorrectly attesting that they had satisfied the CDC's requirements for safely disembarking crew members.  DE 19 at ¶50; *see id.* at ¶50 n.7 (citing and including link to *Miami Herald* article reporting that the threat of criminal prosecution caused concern among Celebrity's executives and gave them pause because they would be agreeing

to go to prison if any of the thousands of foreign crew violated any of the CDC's rules). The executives' concern about certifying, subject to the imposition of personal criminal liability, that thousands of people would each comply with the CDC's onerous travel requirements was not "unreasonable and unwarranted under the circumstances."

Despite that well-founded concern, Celebrity informed its crew on May 3, 2020 that its executives would sign the attestation in the hope that the threat of criminal prosecution would ultimately be withdrawn. DE 19 at ¶50 (article linked at n.7). And, on May 26, Plaintiffs and 200 other Filipino citizens aboard the Millennium were flown to the Philippines on a charter flight that was arranged and paid for by Celebrity. DE 10; *see also Maglana*, 2022 WL 3134373, at *2.

The amended complaint's allegations regarding this period of time – from May 3, when Celebrity said it would sign the attestation; to May 26, when Plaintiffs left the ship to travel to the Philippines – are sparse. DE 19 at ¶51. Based on paragraph 51 of the amended complaint, Plaintiffs' position appeared to be that it took Celebrity too long to get them to the Philippines after Celebrity agreed to sign the attestation, thus falsely imprisoning them aboard the ship. However, any such position is belied by the materials cited and linked in the amended complaint, which control over any contrary allegations in the amended complaint. *See Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007) (quoting *Simmons v.*

*Peavey-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940)) ("'Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control.").

The CDC required that every flight that Mr. Maglana, Mr. Bugayong, and the other crew members would take to get to their countries – not just the outbound flights from the United States, but also all connecting flights occurring entirely abroad – be private charter flights. DE 55-1. The CDC required that all ground transportation, in the United States and abroad until the crew members reached their "respective homes or new duty stations," be conducted by "industry-chartered private transport" or "personal vehicles (no rental cars, taxis, or ride-share services)." *Id.* Once a crew member's journey home started, the CDC required that the crew member "will not have a transportation layover exceeding 8 hours." *Id.* And, obviously, Plaintiffs could not be flown or otherwise transported to the Philippines unless and until that nation's borders were open and aircraft carrying Plaintiffs were permitted to enter.

That it took 23 days for Celebrity to arrange travel from California to the Philippines in the middle of pandemic and global quarantine – travel that was required, under penalties of criminal liability, to comply with the CDC's onerous requirements – is not "unreasonable and unwarranted under the circumstances."

These reasons for dismissal – which were addressed in Celebrity's motion to dismiss, and to which Plaintiffs did not respond – are additional reasons that the dismissal with prejudice of Count II of the amended complaint should be affirmed.

## II. THE TRIAL COURT CORRECTLY DISMISSED WITH PREJUDICE COUNT V, FOR IIED, BECAUSE IT FAILED TO STATE A CLAIM.

Count V of the amended complaint purported to state a claim for IIED. Celebrity moved to dismiss Count V for failure to state a claim. DE 55 at 10-13. The *only* argument that Plaintiffs made in response to Celebrity's arguments – and, thus, the only argument that they can make on appeal[5] – was to cite a district court decision in which that court stated that instead of dismissing a claim for IIED, it would allow the evidentiary record to develop and revisit the issue later in the litigation. DE 56 at 13-14.

The district court dismissed Plaintiffs' claim, ruling that even when accepting the allegations as true, the alleged conduct did not rise to the level necessary to state a claim for IIED, and the court cited other decisions that dismissed COVID-related IIED claims for failure to state a claim. DE 83 at 8-11. The district court was correct.

---

[5] *See, e.g., In re: Club Associates,* 956 F.2d 1065, 1070 (11th Cir. 1992) ("As a general rule, appellate courts will not consider an issue that is raised for the first time on appeal."); *Access Now, Inc. v. Southwest Airlines Co.,* 385 F.3d 1324, 1331 (11th Cir. 2004) (collecting decisions).

"Courts sitting in admiralty typically look to the standards set out in the Restatement (Second) of Torts § 46 (1965) as well as state law to evaluate claims for intentional infliction of emotional distress ('IIED')." *Wu v. NCL (Bahamas) Ltd.*, 2017 WL 1331712, at *2 (S.D. Fla. Apr. 11, 2017) (citing *Wallis v. Princess Cruises, Inc.*, 306 F.3d 827, 841 (9th Cir. 2002)). A claim for IIED requires a plaintiff to plead and prove: "(1) deliberate or reckless infliction of mental suffering; (2) by outrageous conduct; (3) which conduct must have caused the suffering; and (4) the suffering must have been severe." *Hart v. United States*, 894 F.2d 1539, 1548 (11th Cir. 1990). The cause of action for IIED is "sparingly recognized" and "[a] plaintiff alleging IIED faces an extremely high burden . . . ." *See id.* "This sparse recognition is reflected in the [] maritime cases addressing claims of IIED." *Kantrow v. Celebrity Cruises Inc.*, 510 F.Supp.3d 1311, 1324 (S.D. Fla. 2020). "Whether conduct is sufficiently 'outrageous' to state a claim for IIED is a question of law for the Court to decide." *Garcia v. Carnival Corp.*, 838 F.Supp.2d 1334, 1339 (S.D. Fla. 2012).

As the district court ruled, the heightened burden required for IIED claims simply is not met here. As has been addressed, the CDC's No Sail Order prohibited Plaintiffs from leaving the ship and required them to stay aboard. Then, the CDC changed its rules and allowed crew members to leave their ships and enter the United States for the sole and limited purpose of travelling directly to their countries, but

only if Celebrity's top executives certified – under penalty of personal criminal liability – that each of Celebrity's thousands of crew members would comply with the CDC's rules until they reached their homes in the Philippines).  Once that window opened, Celebrity arranged the travel that would take Plaintiffs and the hundreds of other Filipino crew aboard the *Millennium* from California to the Philippines – in the midst of a pandemic and global quarantine – in a way that satisfied (a) the CDC's logistically challenging requirements of ensuring that Plaintiffs would not encounter any member of the public at any time from the moment Plaintiffs and the others left the ship in California until they arrived at their respective houses in the Philippines, and (b) the Philippines' requirements, including when it would permit the crew to return.

Those facts – which come from the amended complaint and the materials it cites and links – do not come anywhere close to stating a claim for IIED, and, indeed

[a] brief survey of Florida and maritime cases addressing claims of IIED underscores this point. *See, e.g., Rubio v. Lopez*, 445 Fed.Appx. at 175 (finding failure to allege sufficient outrageous conduct where deputy sheriff hobble-tied arrestee on black asphalt pavement in sun, resulting in second-degree burns to face and chest); [*Wallis v. Princess Cruises, Inc.*, 306 F.3d 827, 842 (9th Cir. 2002)] (finding no outrageous conduct where crew member on cruise ship remarked in the plaintiff's hearing after her husband fell overboard that her husband was probably dead and that his body would be sucked under the ship, chopped up by the propellers, and would probably not be recovered); *Garcia v. Carnival Corp.*, 838 F.Supp.2d 1334, 1339 (S.D. Fla. 2012) (Moore, J.) (finding no outrageous conduct where crew members assaulted cruise passenger and prevented her from leaving her

room for a period of time); [*Vamper v. United Parcel Service, Inc.*, 14 F.Supp.2d 1301, 1306-07 (S.D. Fla. 1998)] (finding no outrageous conduct where defendants fabricated reckless driving charge against plaintiff, called him the "n" word, threatened him with termination, and physically struck him on ankle).

*See Wu*, 2017 WL 1331712, at *2 (parentheticals in original) (additional internal quotation marks and citation omitted); *see also Kantrow*, 510 F.Supp.3d at 1324-25.

The district court also correctly assessed the amended complaint's allegations (which Celebrity addressed in the motion) that Plaintiffs' alleged emotional distress was increased because by remaining on the ship they were "continually exposed to the pandemic." DE 19 at ¶105. Specifically, the district court cited and discussed two orders from other judges within the same district that dismissed claims for IIED because the high burden associated with pleading IIED was not met where the plaintiffs alleged that people on cruise ships were exposed to COVID-19, and that cruise ship operators did not sufficiently test for the virus or do enough to reduce the risk of exposure, and even misrepresented the extent to which the virus was present aboard the ships. DE 83 at 9-10 (citing *Kantrow*, 510 F.Supp.3d 1311; *Macias v. Celebrity Cruises Inc.*, 2021 WL 5853585 (S.D. Fla. Nov. 19, 2021)). The time that Plaintiffs spent on the ship after their employment was terminated does not give rise to a clam for IIED.[6]

---

[6] The claim for IIED alleges that Plaintiffs were kept on the ship "unlawfully and without just cause, perpetually, ***without wages***[,]" which added to their emotional distress. DE 19 at ¶103 (emphasis added). Whether Plaintiffs were required to be

As already mentioned, the only argument that Plaintiffs made below, which, consequently is the only argument they can make on appeal, was to cite a decision, *Elbaz v. Royal Caribbean Cruises Ltd.*, 2017 WL 3773721, at **4-5 (S.D. Fla. Jan. 12, 2017), where a court chose not to dismiss a claim for IIED in order to allow the evidentiary record to develop and then revisit the issue later in the litigation. *See Elbaz v. Royal Caribbean Cruises Ltd.*, 2017 WL 3773721, at **4-5 (S.D. Fla. Jan. 12, 2017); *see also* Br. at 15-16.

At the outset, the decision in *Elbaz* is suspect because it deferred until after discovery a decision on whether the complaint stated a claim despite the fact that "[w]hether conduct is sufficiently 'outrageous' to state a claim for IIED is a question of law for the Court to decide." *See Garcia*, 838 F.Supp.2d at 1339.

Beyond that, though, *Elbaz* and the decision it cites, *Markham v. Carnival Corp.*, 2012 WL 12866787, at *4 (S.D. Fla. Dec. 3, 2012), are distinguishable because one (*Elbaz*) involved a plaintiff's allegations that the IIED arose from the defendant causing the death of the plaintiff's spouse, and the other (*Markham*)

---

paid wages while they remained aboard the ship – and whether they were paid wages during that time – are the same issues that were raised in the claim for unpaid wages and penalty wages (Count IV) for which the district court compelled arbitration and that Plaintiffs did ***not*** challenge on appeal. Any and all wage-related issues are required to be determined in arbitration, and if Plaintiffs' position is that the claim for IIED requires the determination of wage-related obligations arising under the collective bargaining agreement – the same agreement that contains the arbitration provision – then the claim for IIED must be dismissed in favor of arbitration.

involved the defendant's alleged improper behavior towards a plaintiff relating to, and in the immediate aftermath of, her husband's death, including allegations that the defendant lied to the wife about her husband's cause of death. See *Elbaz*, 2017 WL 3773721, at **1, 4-5; *Markham*, 2012 WL 12866787, at **1, 3-4. Indeed, *Markham* notes that "in this '*unique*' area" involving the death of a loved one, "'behavior which in other circumstances might be merely insulting, frivolous, or careless becomes indecent, outrageous and intolerable.'" *See Markham*, 2012 WL 12866787, at *3 (emphasis added).

Those simply are not the circumstances alleged in the amended complaint. Plaintiffs' allegations do not involve the death of a loved one, and the allegations they made do not rise to the level of outrageousness that is necessary to satisfy the "extremely high burden" for this "sparingly recognized" claim. *See Wu*, 2017 WL 1331712, at *2; *see also Kantrow*, 510 F.Supp.3d at 1324-25. The district court was correct in dismissing Count V with prejudice because it failed to state a claim.

## CONCLUSION

For these reasons, this Court should affirm the dismissal with prejudice of Counts II and V of the amended complaint.

HOLLAND & KNIGHT LLP
Amit Agarwal (FBN 125637)
Email: amit.agarwal@hklaw.com
300 South Calhoun Street
Suite 600
Tallahassee, Florida 32301
(850) 224-7000 (telephone)

HOLLAND & KNIGHT LLP
701 Brickell Avenue
Suite 3300
Miami, Florida 33131
(305) 374-8500 (telephone)

By: /s/ Scott D. Ponce
      Alex M. Gonzalez (FBN 991200)
      Email: alex.gonzalez@hklaw.com
      Scott D. Ponce (FBN 0169528)
      Email: sponce@hklaw.com

Attorneys for Appellee

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because it contains 8,370 words, excluding the parts of the brief excluded by Rule 32(a)(7)(B)(iii) and Eleventh Circuit Rule 32-4. This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

By: /s/ Scott D. Ponce

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of April 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF System.

By:  /s/  Scott D. Ponce

#243710722_v5